**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MATTHEW WARCIAK, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | |
| v. | Case No. 16-cv-8694 |
| SUBWAY RESTAURANTS, INC., a Delaware corporation, | |
| *Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUBWAY
RESTAURANTS, INC.'S MOTION TO COMPEL ARBITRATION**

Pursuant to 9 U.S.C. §§ 3 and 4, Defendant Subway Restaurants, Inc. ("SUBWAY®") hereby respectfully moves this Court to enter an Order: (i) compelling individual arbitration of Plaintiff Matthew Warciak's claims as required by his arbitration agreements with T-Mobile USA, Inc. ("T-Mobile"); and (ii) staying or dismissing this litigation against SUBWAY® until arbitration is complete.[1]

## I.      INTRODUCTION

Plaintiff Matthew Warciak purports to assert Telephone Consumer Protection Act ("TCPA") and Illinois Consumer Fraud Act ("ICFA") claims against SUBWAY® based upon a text message that was sent to him on his wireless phone not by SUBWAY®, but by an entirely different entity – T-Mobile, his wireless service provider.  Even if a violation occurred (which one did not), Plaintiff cannot bring these claims in this Court.  Plaintiff's wireless service agreements require him to individually arbitrate, rather than litigate in court, the claims he attempts to assert in this lawsuit.  This is true despite Plaintiff's attempt to game the system by choosing to assert his claims solely against SUBWAY® to circumvent his express agreements to arbitrate his claims.  But Plaintiff cannot so easily avoid his arbitration obligation.

SUBWAY®'s Motion to Compel Arbitration should be granted because Plaintiff is bound by the arbitration agreements with T-Mobile, and the doctrine of equitable estoppel permits SUBWAY® (as a non-signatory) to enforce the arbitration agreements.  Equitable estoppel

---

[1] Even if this case proceeded in this court, dismissal would nonetheless be appropriate on other grounds, including but not limited to Plaintiff's failures to allege Article III standing under the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and to allege that SUBWAY® engaged in any conduct that violated the TCPA, and the fact that the TCPA does not apply to the texts at issue because they were sent by Plaintiff's wireless service carrier (not SUBWAY®) and fall within the wireless carrier exemption to the statute.  In addition, the Complaint improperly names Subway Restaurants, Inc. as the defendant.  Subway Franchisee Advertising Fund Trust, Ltd. is the proper party for the claims Plaintiff attempts to assert here.  In the event this case proceeds beyond this Motion to Compel Arbitration (and it should not), SUBWAY® will file a dispositive motion on these grounds.

applies because Plaintiff's claims against SUBWAY® are based on allegations involving T-Mobile's conduct and presume the existence of Plaintiff's agreements with T-Mobile. Specifically:

- Plaintiff, as a T-Mobile customer and authorized user, is bound by the T-Mobile arbitration agreements. The scope of the agreements is broad, encompassing "any and all claims or disputes in any way related to or concerning the agreement, [T-Mobile] services, devices or products." *See* Declaration of Christopher Muzio ("Muzio Decl."), filed concurrently, at Tabs 1 and 2.

- Plaintiff's claims in this litigation fall squarely within the scope of the arbitration agreements. Plaintiff's claims relate to or concern his T-Mobile device because: (i) he bases his claims on a text message sent by T-Mobile to that device; (ii) the text was sent by T-Mobile to Plaintiff in connection with the T-Mobile Tuesdays customer appreciation giveaway to inform him about benefits he can receive as part of his T-Mobile wireless service; and (iii) his agreements expressly allow T-Mobile to "contact [its customers] in any way, including, pre-recorded or artificial voice or text messages delivered by an automatic telephone dialing system." Muzio Decl. ¶ 21.

- SUBWAY® is entitled to enforce Plaintiff's arbitration agreements under the equitable estoppel doctrine. Plaintiff alleges interdependent and concerted conduct by T-Mobile and SUBWAY®, and Plaintiff's claims presume the existence of an agreement with T-Mobile. Specifically, Plaintiff seeks to hold SUBWAY® liable for a text T-Mobile sent to Plaintiff because he is a T-Mobile customer. Accordingly, the doctrine of equitable estoppel permits SUBWAY® to enforce the arbitration agreements.

2

For these reasons, and those set forth more fully below, the Federal Arbitration Act ("FAA") requires this Court to grant this motion and compel Plaintiff to individually arbitrate his claims.

## II.  BACKGROUND

Plaintiff is a T-Mobile customer and authorized user on a T-Mobile account belonging to Anna Warciak.  Compl. ¶ 15; Muzio Decl. ¶ 23.  On May 13, 2006, Anna Warciak activated a line of service at a T-Mobile store.  Muzio Decl. ¶ 2.  At the time of activation, Anna Warciak signed a contract with T-Mobile, which incorporated T-Mobile's 2004 Terms and Conditions, and received a copy of the Terms and Conditions.  *Id.*  Anna Warciak also agreed to and accepted the 2004 Terms and Conditions when she activated and used the wireless service provided by T-Mobile.  *Id.* ¶¶ 4, 5.  The 2004 Terms and Conditions contain a mandatory arbitration agreement and class action waiver.  *Id.* ¶¶ 6, 8.

On June 1, 2012, Anna Warciak performed an in-store handset upgrade, signed a service agreement, and agreed to a two-year extension of her service agreement.  *Id.* ¶ 11.  T-Mobile's December 2011 Terms and Conditions were in effect at that time.  *Id.* ¶ 14.  Anna Warciak accepted the Terms and Conditions by activating and using service on her phones, and paying for service.  *Id.* ¶¶ 15, 16.

The arbitration agreement is mentioned at the outset of the December 2011 Terms and Conditions in the second unnumbered paragraph, which states: "**Please read these T&Cs carefully.**  They cover important information about T-Mobile services provided to you . . . . **These T&Cs include . . . resolution of disputes by arbitration instead of in court.**"  Muzio Decl. ¶ 18 & Tab 2.  The T&Cs prominently disclose and explain the arbitration obligation in the second numbered paragraph and state in pertinent part:

> **2. \* Dispute Resolution and Arbitration.  WE EACH AGREE THAT . . . ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO**

3

**OR CONCERNING THE AGREEMENT, [T-MOBILE'S] SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, Dealers or third party vendors) whenever you also assert claims against us in the same proceeding. We each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision in Section 27).

*Id.* ¶ 19 (emphasis in original). The agreement also contains a class action waiver:

**CLASS ACTION WAIVER. WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.**

*Id.* (emphasis in original). The arbitration agreement allowed Anna Warciak the opportunity to opt out of the arbitration altogether, but she never did. *Id.*

Although Anna Warciak is not a plaintiff in this case, Plaintiff Matthew Warciak is also a customer of T-Mobile and is bound by the T-Mobile's arbitration agreements. Compl., ¶ 15 Plaintiff's cellular telephone was added to Anna Warciak's account on December 14, 2010. *See* Declaration of Derin Dickerson at ¶¶ 2, 3; Muzio Decl. ¶ 22. Later, on May 19, 2014, Plaintiff was added as an authorized user on Anna Warciak's account. Muzio Decl. ¶ 23. As an authorized user, Plaintiff had full access to the account and was authorized to make changes. *Id.* Plaintiff did, in fact, exercise this authority. For example, on one occasion, Plaintiff called T-Mobile to inquire about his rate plan and indicated that he thought his bill was higher than it should be. *Id.* ¶ 24. In response to Plaintiff's inquiry, T-Mobile changed his rate plan and issued a credit to Plaintiff's (and Anna Warciak's) account. *Id.* T-Mobile's records also reveal that Plaintiff regularly uses his T-Mobile phone and service. *Id.* ¶ 25.

## III.    ARGUMENT

### A.    The FAA Applies and Requires Enforcement of the Arbitration Agreements.

The FAA preempts state law and requires enforcement of arbitration agreements by providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce." *Id.* The Supreme Court has expansively construed the phrase "involving commerce" as extending the FAA's reach to the full limit of Congress' Commerce Clause power. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995).

The FAA unquestionably applies to the arbitration agreements at issue here. Indeed, the agreements expressly provide that they "affect[] interstate commerce so that the Federal Arbitration Act and federal arbitration law apply." Muzio Decl. ¶ 19; *see also id.* ¶ 8. Moreover, the FAA applies because the contract between T-Mobile and Anna Warciak is a contract between citizens of different states. T-Mobile is a Delaware corporation with its principal place of business in Washington. *Id.* ¶ 26. The billing address for Anna Warciak's account is located in Illinois. *Id.* ¶ 9. Contracts between citizens of different states affect commerce, rendering the FAA applicable. *See, e.g.*, *Jet Vac Inc. v. J&L Mgmt. Corp.*, No. 3:07-cv-062 CAN, 2007 WL 1749227, at *1 n.1 (N.D. Ind. June 14, 2007). Finally, the FAA applies because Anna Warciak's contract with T-Mobile relates to the provision of wireless service to Plaintiff both inside and outside of Illinois, further making clear that the agreements affect interstate commerce. *See generally Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989) (telecommunications industry constitutes interstate commerce).

"The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted). The FAA both "embod[ies]" and declares a "national policy favoring arbitration." *Id.* at 346; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The

5

Supreme Court has interpreted the FAA as reflecting both "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 333. "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* at 339. This includes circumstances in which a non-signatory seeks to enforce an arbitration agreement pursuant to common-law contract principles. *See Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001).

Time after time, the Supreme Court has recognized this strong public policy in favor of arbitration. *See, e.g. Am. Exp. Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2308–09 (2013); *Concepcion*, 563 U.S. at 339. Illinois law is in accord. *See Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 530 N.E.2d 439, 443 (Ill. 1988) ("The [Illinois Uniform Arbitration Act] embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes."). To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). The Supreme Court has instructed that courts should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357. "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *Concepcion*, 563 U.S. at 346. Accordingly, this Court should grant SUBWAY®'s Motion and require Plaintiff to arbitrate his claims because, as set forth below: (i) Plaintiff accepted the benefits of Anna Warciak's agreements with T-Mobile and thus is bound by the agreements' obligations, including the arbitration agreements; (ii) Plaintiff's claims fall within the scope of those arbitration

agreements; and (iii) equitable estoppel permits SUBWAY® to enforce Plaintiff's arbitration agreements with T-Mobile.

**B.      Plaintiff is Bound by the Arbitration Agreements in T-Mobile's Terms and Conditions.**

1.    Anna Warciak entered into arbitration agreements.

Anna Warciak accepted T-Mobile's December 2004 Terms and Conditions when she signed a service agreement and activated T-Mobile service on May 13, 2006.  Muzio Decl. ¶¶ 4, 5.  She likewise accepted T-Mobile's 2011 Terms and Conditions when she signed a service agreement and purchased a new phone on June 1, 2012.  *Id.* ¶¶ 11, 15, 16.  Both sets of Terms and Conditions require individual arbitration of disputes.  *Id.* ¶¶ 7, 8, 18, 19.

2.    Plaintiff is bound by Anna Warciak's arbitration agreements.

A non-signatory to an arbitration agreement is required to arbitrate his claims if he "knowingly seeks the benefits of the contract containing the arbitration clause."  *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005).  Plaintiff, as an authorized user of Anna Warciak's T-Mobile account, has undoubtedly benefited from the T-Mobile agreements that contain the arbitration clause.   In fact, Plaintiff acknowledges that **he is a T-Mobile customer**.  Compl. ¶ 15.  There could be no clearer indication of Plaintiff's acceptance of the benefits of the T-Mobile agreements than his own acknowledgment.  Moreover, Plaintiff is an active user of T-Mobile's services provided pursuant to T-Mobile's agreements and has interacted with T-Mobile regarding account information.  Muzio Decl. ¶¶ 24, 25.  Because Plaintiff knowingly sought and accepted the benefits of Anna Warciak's agreements with T-Mobile, he is bound to the arbitration obligation contained in those agreements.

The analysis by Judge Kennelly in *A.D. v. Credit One Bank, NA*, is directly on point. There, Judge Kennelly held that the plaintiff became bound by the arbitration agreement in her

mother's credit card agreement when she used her mother's credit card. *A.D. v. Credit One Bank, NA*, No. 14 C 10106, 2016 WL 4417077, at \*11 (N.D. Ill. Aug. 19, 2016). The plaintiff in *Credit One Bank* was a minor who alleged that a credit card company violated the TCPA by repeatedly calling her cell phone to collect on a debt the plaintiff did not owe. *Id.* at \*1-2. The agreement between the credit card company and the plaintiff's mother contained an arbitration provision, and the credit card company moved to compel arbitration of the plaintiff's TCPA claims. The credit card company argued that the plaintiff was bound to the arbitration agreement because she had benefitted from the credit card agreement when she "used her mother's credit card on at least one occasion and allowed her mother to use her cell phone to call [the credit card company] to make an inquiry about her account." *Id.* at \*10. The court granted the credit card company's motion to compel arbitration, holding that a non-signatory is bound to arbitrate disputes where the non-signatory "knowingly seeks the benefits of the contract containing the arbitration clause." *Id.*

The same analysis applies here and leads to the undeniable conclusion that Plaintiff is bound by the arbitration provisions in Anna Warciak's agreements with T-Mobile. As with the plaintiff in *Credit One Bank*, Plaintiff Warciak knowingly derived and actively sought out benefits from agreements containing an arbitration clause. Specifically, Plaintiff benefited from Anna Warciak's agreements with T-Mobile by using a wireless telephone line associated with that account to make telephone calls, receive data transmitted across T-Mobile's network, send and receive text messages and receive credits related to the service plan on his line. Muzio Decl. ¶ 25; *see also* Compl. ¶ 19. Plaintiff concedes he is a T-Mobile customer. Compl. ¶ 15. Plaintiff is therefore bound by all of the provisions of Anna Warciak's agreements with T-

Mobile, including the arbitration clauses.[2] *See id.*; *see also Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 647-49 (N.D. Ohio 2007) (plaintiff bound to arbitrate under credit card agreement because he benefitted from it by using the card, even though he never signed the credit card agreement or never received a copy of the terms and conditions).

### C. Plaintiff's Claims Fall Within the Scope of Plaintiff's Arbitration Agreements.

The arbitration agreements broadly apply to "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS**". Muzio Decl. ¶ 19 (emphasis in original); *see also id.* ¶ 8. Plaintiff's claims fall within the scope of the clause because they relate to or concern T-Mobile's services, devices, and products. Plaintiff bases his claims on an allegation that T-Mobile sent a text to Plaintiff's wireless phone, as part of the T-Mobile Tuesdays program, a program designed to thank T-Mobile customers for their loyalty. Compl., ¶¶ 14, 20. The text message at issue informed Plaintiff of a gift that he was entitled to receive solely for being a T-Mobile customer. Compl. ¶ 14. Specifically, Plaintiff alleges that the text message he and other T-Mobile customers received informed them that they could get the free sandwich "just for being w/T-Mobile." *Id.* Thus, Plaintiff's claims clearly relate to T-Mobile's services, devices, and products, and fall within the scope of the arbitration agreements.

Despite having received the text message in question from T-Mobile, Plaintiff has sued only SUBWAY® in a barely disguised effort to avoid arbitration. But the fact that Plaintiff

---

[2] This Court's prior decision in *Pereira v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2012 WL 4464893 (N.D. Ill. Apr. 2, 2012), does not compel a contrary result. That case is squarely distinguishable because the plaintiff had no connection to the underlying agreement that contained the arbitration clause. By contrast, Plaintiff is a T-Mobile customer and an authorized user on a T-Mobile account.

asserts these claims against SUBWAY®, and not T-Mobile, does not remove this dispute from the scope of the arbitration agreements. The scope of Plaintiff's arbitration agreements is broad and is not limited to disputes between Plaintiff and T-Mobile (or Ms. Warciak and T-Mobile); they apply to all disputes that fall within the subject matter of the clause. The agreements expressly contemplate arbitration of disputes involving third parties: "This [arbitration agreement] includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, Dealers or third party vendors) whenever you also assert claims against us in the same proceeding." Muzio Decl. ¶ 19; *see also id.* ¶ 8. That provision, while intended to expand the scope of the arbitration provision, is not exhaustive. The full scope is defined to cover any claims that relate in any way to T-Mobile's products, devices, services or the agreements themselves. The fact that the agreements specify one circumstance in which they apply to disputes with third parties does not limit their otherwise broad application. *See Paxson v. Bd. of Educ. of Sch. Dist. No. 87, Cook Cty., Ill.*, 658 N.E.2d 1309, 1314 (Ill. Ct. App. 1995) (use of the term "including" in a contract is generally "a term of enlargement, not of limitation"). Given that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Plaintiff's claims against SUBWAY® fall within the scope of the arbitration agreements. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Leff v. Deutsche Bank AG*, No. 08-cv-733, 2009 WL 1380819, at *2, 6 (N.D. Ill. May 14, 2009) (claims against non-party to arbitration agreement fell within the scope of arbitration clause that required arbitration of "[a]ny controversy arising out of or relating to this Agreement or the breach thereof").

    **D.    SUBWAY® Is Entitled to Enforce Plaintiff's Arbitration Agreements with T-Mobile.**

Although SUBWAY® is not a signatory, it is nonetheless entitled to enforce the arbitration agreements against Plaintiff. This court applies "applicable federal precedent . . . to

10

determine whether the arbitration provision applies to a non-signatory." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889 (N.D. Ill. 2014). Under the doctrine of equitable estoppel,

> a non-signatory may compel arbitration in two distinct circumstances: when the signatory references or presumes the existence of a written agreement in asserting its claims against the non-signatory, and when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.

*Id.* at 889-90. Equitable estoppel applies when either of these two circumstances exist. *See Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001). Judges in this district have applied the doctrine of equitable estoppel even when neither party to the dispute is a signatory to the agreement. *See Leff*, 2009 WL 1380819, at *4 (N.D. Ill. May 14, 2009). As discussed below, although just one of the two circumstances is needed, both are satisfied here and permit SUBWAY® to compel arbitration of Plaintiff's claims.

1. The Complaint Raises Allegations of Substantially Interdependent and Concerted Misconduct between SUBWAY® and T-Mobile.

Under the doctrine of equitable estoppel, a non-signatory to an arbitration agreement may compel arbitration of the claims against it where those claims concern allegations of substantially interdependent and concerted misconduct between the non-signatory and a party to the agreement. This test is satisfied where "plaintiffs allege in their complaint that defendant and [the signatory to the arbitration agreement] acted together." *Johnston v. Arrow Fin. Servs., LLC*, No. 06 C 0013, 2006 WL 2710663, at *5 (N.D. Ill. Sept. 15, 2006). Thus, application of the theory is particularly appropriate in cases where "the plaintiff is seeking to avoid [the arbitration provision] by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

11

This prong of the equitable estoppel test is easily satisfied here. Plaintiff's Complaint asserts claims against SUBWAY® based on a text sent by T-Mobile. Compl. ¶ 33.[3] Because Plaintiff's claims rest on T-Mobile's alleged conduct, Plaintiff's claims cannot be resolved without analyzing the alleged conduct of T-Mobile, a signatory to the arbitration agreements. *See MorseLife Found., Inc. v. Merrill Lynch Bank & Tr. Co., FSB*, No. 09-811430-CIV, 2010 WL 2889932, at *4 (S.D. Fla. Jul. 21, 2010) (equitable estoppel appropriate where "none of [the signatory plaintiff's] allegations against the [non-signatory] can be considered without analyzing the alleged conduct . . . of the other signatory" to the arbitration agreement). If the alleged T-Mobile conduct were removed from the Complaint, there would be no basis whatsoever for the claims Plaintiff asserts against SUBWAY®. *See Grigson*, 210 F.3d at 528 (equitable estoppel appropriate where acts alleged in the Complaint are based on the conduct of both signatories and non-signatories).

In addition, because the Complaint alleges concerted conduct between SUBWAY® and T-Mobile, if this case were to proceed, Plaintiff would undoubtedly seek to obtain information from T-Mobile through non-party discovery. For example, Plaintiff is likely to seek information about the technology used to send the message, the number of texts T-Mobile sent to the putative class, T-Mobile's basis for believing it had consent to send the text, and the extent to which SUBWAY® was involved in T-Mobile's decision to send the texts at issue. Compl. ¶ 21. T-Mobile "in essence, [would] become[] a party, with resulting loss, *inter alia*, of time and money because of its required participation in this proceeding." *Grigson*, 210 F.3d at 528. This result would be especially inequitable to T-Mobile, which relied on its agreements with Plaintiff to

---

[3] SUBWAY® denies that it sent or had a text message sent to Plaintiff. T-Mobile sent the text message at issue; not SUBWAY®. For purposes of this motion, we treat the allegation that SUBWAY® "had them sent" as true.

arbitrate on an individual basis – not litigate in a class action proceeding – all disputes concerning T-Mobile's service, equipment, devices, or products, including disputes involving independent third parties. *See id.* (allowing a plaintiff to litigate instead of arbitrate is "especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant" and "the plaintiff is seeking to avoid [the arbitration] agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory"). The fact that T-Mobile would likely be significantly involved in any litigation if this case were to go forward is yet another reason Plaintiff is estopped from denying his obligation to arbitrate the claims he asserts in this action.

Plaintiff should not be rewarded for tactically selecting one party to be the defendant and ignoring another party, especially when it is the absent party that engaged in the conduct alleged to be a violation of law. Plaintiff's gamesmanship is motivated by his realization that if T-Mobile were named as a defendant in this action, Plaintiff's claims against both SUBWAY® and T-Mobile would fall directly in the third-party example set forth in the arbitration agreements – "claims against others relating to services or equipment provided or billed to you (such as [T-Mobile's] suppliers, dealers or vendors) when you also assert claims against [T-Mobile] in the same proceeding." Muzio Decl. ¶ 19; *see also id.* ¶ 8. Equitable estoppel bars Plaintiff from deliberately crafting his Complaint to omit claims against the entity responsible for sending the text at issue simply to avoid his prior agreements to arbitrate. *See Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 767 n.14 (N.D. Ill. 2005) (noting that equitable estoppel is based on concepts of fairness and equity). Preventing a "tactical ploy to try to avoid [the plaintiff's] binding agreement to arbitrate" is the very reason that equitable estoppel exists. *See MorseLife Found. Inc.*, 2010 WL 2889932, at *3.

13

2. Plaintiff's Claims Against SUBWAY® Presume the Existence of Plaintiff's Agreements with T-Mobile.

Equitable estoppel also applies for the independent reason that Plaintiff's claims "presume[] the existence" of his agreements with T-Mobile. *See Paragon Micro, Inc.*, 22 F. Supp. 3d at 889. Plaintiff only received the text message – which informed him of a gift available to him through his T-Mobile service – because he was a T-Mobile customer. The court compelled arbitration in an analogous situation in the *In re Apple iPhone 3G Products Liability Litigation*. There, the plaintiffs alleged that Apple and AT&T Mobility ("ATTM") made false and misleading statements about the iPhone's performance on ATTM's 3G cellular network. *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1094 (N.D. Cal. 2010). Apple, a non-signatory, filed a motion to compel arbitration based on ATTM's arbitration agreement. *Id.* at 1093. The court rejected the argument that the claims against Apple were not intertwined with the ATTM contract, noting that Plaintiffs only had access to the ATTM 3G network because they had signed contracts with Defendant ATTM which granted them access to that network." *Id.* at 1096.

The same rationale applies here. Plaintiff's claims against SUBWAY® are intertwined with Plaintiff's agreements with T-Mobile because Plaintiff received the text message at issue from T-Mobile only because he was a T-Mobile customer. Compl. ¶¶ 14, 15 (admitting text only sent to T-Mobile customers). Thus, as in *iPhone 3G*, the equitable estoppel doctrine applies.

**E.    The Arbitration Agreements Are Valid and Enforceable Under Illinois Law.**

Although the FAA and the strong federal policy in favor of arbitration apply to Plaintiff's arbitration agreements, state law determines the arbitration agreements' enforceability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Even when applying state law,

14

however, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

Illinois law applies to determine whether the arbitration clauses in the agreements are enforceable.[4] Illinois courts strongly favor arbitration. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 277-78 (Ill. 2006). Under Illinois law, arbitration clauses will be enforced unless they are procedurally unconscionable, substantively unconscionable, or a mixture of both. *O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010 WL 4932665, at *3 (N.D. Ill. Nov. 29, 2010). Plaintiff bears the burden of proving unconscionability. *Id.* The arbitration agreements here are neither substantively nor procedurally unconscionable as the arbitration agreements include an opt-out provision. This Court has held that this type of provision precludes a finding of procedural or substantive unconscionability. *See id.* at *5 and 6 (ability to opt out within 30 days "weighs heavily against a finding of procedural unconscionability" and against substantive unconscionability). T-Mobile's arbitration provisions also include fee-shifting provisions that establish that they are not substantively unconscionable. *See id.* at *6; Muzio Decl. ¶¶ 8, 19. Plaintiff's arbitration agreements are fully enforceable and SUBWAY®'s Motion should be granted.

**F.      Dismissal or Stay of the Action is Appropriate Because Plaintiff's Claims Must Be Submitted to Arbitration.**

When, as here, a plaintiff asserts claims that fall within the scope of enforceable arbitration agreements, the court must either stay or dismiss the lawsuit and compel arbitration. *See Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008 (N.D. Ill. 2013). Here, because the claims Plaintiff raises are arbitrable, dismissal of this action is required. *Id.* Alternatively, this

---

[4] The T-Mobile agreement provides that the laws of the state of the consumer's billing address apply. Anna Warciak's billing address in T-Mobile's records is located in Illinois. Muzio Decl. ¶ 9.

Court should stay the case because Plaintiff's claims must be submitted to arbitration. The FAA provides that, once satisfied that the suit should be moved into arbitration, a court "*shall* on application of one of the parties *stay the trial of the action*." 9 U.S.C. § 3 (emphasis added). Because Plaintiff must arbitrate the claims asserted here, Section 3 requires that this case be stayed, if not dismissed.

## V.  <u>CONCLUSION</u>

For all the reasons stated herein, Plaintiff is contractually required to individually arbitrate, rather than litigate in court, his claims against SUBWAY®. Accordingly, SUBWAY® respectfully requests that this Court grant its Motion to Compel Arbitration and dismiss or, alternatively, stay this case in favor of arbitration.

Dated: October 31, 2016                 Subway Restaurants, Inc.

                                        By:  Charles H.R. Peters
                                              One of its attorneys

                                        Kristine McAlister Brown (*pro hac vice*
                                        application pending)
                                        Derin B. Dickerson (*pro hac vice* application
                                        pending)
                                        ALSTON & BIRD
                                        One Atlantic Center
                                        1201 W. Peachtree Street
                                        Suite 4900
                                        Atlanta, GA  30309
                                        Telephone:  (404) 881-7000
                                        Email:  kristy.brown@alston.com
                                        Email:  derin.dickerson@alston.com


                                        Charles H. R. Peters
                                        Lawrence Harris Heftman
                                        SCHIFF HARDIN LLP
                                        233 S. Wacker Drive
                                        Suite 6600
                                        Chicago , IL 60606
                                        Telephone:     (312) 258-5500

Email: cpeters@schiffhardin.com
Email: lheftman@schiffhardin.com